

AO 106A  (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
### for the
### Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Silver LG cellular phone<br>Incident No. CAO2110000100<br>(Target Device 2) | )<br>)<br>)<br>)<br>)<br>)<br>)  Case No.   '20  MJ4582 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A2, incorporated herein by reference.

located in the _____ Southern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC Sec. 841 | Possession and Distribution of Controlled Substances |
| 21 USC 846 | Conspiracy |

The application is based on these facts:
See Attached Affidavit, incorporated herein by reference.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____ )* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's  signature*

Rockwell Herron, DEA Special Agent
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means)*.

Date:    October 21, 2020

City and state:  San Diego, California

_____
*Judge's signature*

Hon. Allison H. Goddard, United States Magistrate Judge
_____
*Printed name and title*

## ATTACHMENT A2

### PROPERTY TO BE SEARCHED

The following property is to be searched:

> Silver LG cellular phone
> Incident Number CAO2110000100
> (Target Device 2)

The Target Device is currently in the possession of the Drug Enforcement Administration (DEA) located at 2050 Sanyo Drive, San Diego, CA 92154.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the cellular telephones described in Attachment A1 and Attachment A2, includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from Target Device 1 and Target Device 2 will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, web history, files, metadata, photographs, audio files, videos, and location data, for the period of September 16, 2020, up to and including October 16, 2020:

      a.    tending to indicate efforts to possess with the intent to distribute controlled substances within the United States;

      b.    tending to identify accounts, facilities, storage devices, and/or services—such as email addresses, IP addresses, and phone numbers—used to facilitate the distribution of and/or the possession with the intent to distribute controlled substances within the United States;

      c.    tending to identify co-conspirators, criminal associates, or others involved in the distribution of and/or the possession with intent to distribute of methamphetamine or other controlled substances within the United States;

      d.    tending to identify travel to or presence at locations involved in the distribution of or possession with intent to distribute controlled substances within the United States, such as stash houses, residences used to prepare or process controlled substances, load houses, or delivery points;

      e.    tending to identify the user of, or persons with control over or access to, Target Device 1 and Target Device 2; and/or

      f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

which are evidence of violations of 21, U.S.C., §§ 841 and 846

**AFFIDAVIT**

I, Special Agent Rockwell Herron, having been duly sworn, declare and state as follows:

**INTRODUCTION**

1. I make this affidavit in support of an application for a warrant to search the following electronic devices:

> Black Samsung cellular phone
> Incident number CAO2110000100
> (Target Device 1)

> Silver LG cellular phone
> Incident number CAO2110000100
> (Target Device 2)

as further described in Attachment A1 and Attachment A2, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 841 and 846, Distribution and Possession with Intent to Distribute Controlled Substances (and Conspiracy to do the same), as further described in Attachment B. The requested warrant relates to the investigation and prosecution of Jeremy HALL and Nicole DETAR for possession, with intent to distribute, approximately 4.68 kilograms (10.31 pounds) of suspected methamphetamine. The Target Devices are currently stored as evidence at the Drug Enforcement Administration (DEA) located at 2050 Sanyo Drive, San Diego 92154.

2. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the Target Device, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## BACKGROUND

3.     I have been employed as a Special Agent with DEA since 1990. I am currently assigned to the San Diego Field Division (SDFD), Narcotic Task Force Team 3.  I am a graduate of the DEA Academy in Quantico, Virginia.

4.     During my tenure with DEA, I have participated in the investigation of various narcotics trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California. Through my training, experience, and conversations with other law enforcement officers experienced in narcotics trafficking investigations, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry and those who possesses and distribute narcotics within and throughout the United States.

5.     I am aware that it is common practice for narcotics traffickers to work in concert utilizing cellular telephones and other portable electronic devices (such as Laptops, iPads, Tablets, etc.). A common tactic utilized by narcotics traffickers is to smuggle controlled substances into the United States from Mexico by concealing the controlled substances in vehicles or on persons entering the United States at Ports of Entry such as the San Ysidro Port of Entry and the Otay Mesa Port of Entry. With respect to the importation of narcotics in this manner, I am aware that narcotics traffickers in Mexico frequently communicate with the individual(s) responsible for importing and/or transporting the concealed narcotics in the United States. These communications can occur before, during and after the narcotics are imported into the United States and transported therein. For example, prior to the importation, narcotics traffickers frequently communicate with the transporter(s) regarding arrangements and preparation for the narcotics importation. When the importation is underway, narcotics traffickers frequently communicate with the transporter(s) to remotely monitor the progress of the narcotics, provide instructions and warn accomplices about law enforcement activity. When the narcotics have been imported into the United States, narcotics traffickers may

2

communicate with co-conspirators immediately prior to and following their illicit transactions to negotiate prices and quantities, coordinate meeting times and locations, discuss the transportation through checkpoints, and then to discuss future transactions or future payments if the narcotics were "fronted" (delivered without being paid for in advance).

6.      Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s)) and other portable electronic devices (such as Laptops, iPads, Tablets, etc.) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones and other portable electronic devices (such as Laptops, iPads, Tablets, etc.) of individuals involved in the importation of narcotics may yield evidence:

a.      tending to indicate efforts to possess with the intent to distribute controlled substances within the United States;

b.      tending to identify accounts, facilities, storage devices, and/or services—such as email addresses, IP addresses, and phone numbers—used to facilitate the distribution of and/or the possession with the intent to distribute controlled substances within the United States;

c.      tending to identify co-conspirators, criminal associates, or others involved in the distribution of and/or the possession with intent to distribute of controlled substances within the United States;

d.      tending to identify travel to or presence at locations involved in the distribution of or possession with intent to distribute controlled substances within the

3

1  United States, such as stash houses, residences used to prepare or process controlled

2  substances, load houses, or delivery points;

3          e.      tending to identify the user of, or persons with control over or access

4  to, the Target Device; and/or

5          f.      tending to place in context, identify the creator or recipient of, or

6  establish the time of creation or receipt of communications, records, or data involved in the

7  activities described above.

8                          **FACTS SUPPORTING PROBABLE CAUSE**

9          7.      On October 16, 2020, On October 16, 2020, the United States Border Patrol

10  Interstate 8 Westbound Immigration Checkpoint near Pine Valley, California was fully

11  operational.  At approximately 7:15 P.M., a black Cadillac (CA 7XOB217) entered the

12  primary inspection area of the checkpoint occupied by Nicole DETAR, driver, and

13  Jeremy HALL, passenger, both U.S. citizens.  As a U.S. Border Patrol Agent (BPA)

14  questioned DETAR where was she coming from and her intended destination, the BPA

15  noticed that DETAR did not make eye contact and appeared extremely nervous.  The

16  BPA also determined the license plate number matched an alert for a vehicle possibly

17  involved in alien smuggling.   The Cadillac was referred to secondary inspection.

18         8.      In secondary inspection a canine sniff of the vehicle was conducted.  The

19  canine alerted to several different areas of the vehicle.  BPA's asked HALL, the owner

20  of the Cadillac, if there were any narcotics or concealed people in the vehicle.  HALL

21  stated that there was no drugs in the car but that his ex-girlfriend did smoke marijuana in

22  it recently.

23         9.      BPAs searched the interior of the vehicle and discovered 11 plastic-

24  wrapped packages in the trunk area of the Cadillac.  The white substance in the packages

25  tested presumptively positive for methamphetamine.  The seized weight of the packages

26  was approximately 4.68 kilograms (10.31 pounds).  DETAR and HALL were placed

27  under arrest.

28

10.    DETAR waived her Miranda warnings and made statements. DETER denied having any knowledge regarding narcotics located inside of the vehicle she was driving.  When asked who the male passenger of the vehicle was, DETAR was unable to think of HALL's name for approximately thirty seconds. DETAR was unable to clearly establish her relationship with HALL as it pertained to their travels. DETAR ultimately stated she was traveling with HALL on this date to visit an unknown friend in El Centro, CA and was returning to Anaheim, CA where she resided. DETAR was asked if HALL was with her the entire time.  She first stated that: "I'm sure he was."

11.    HALL waived his Miranda warnings and made statements. HALL provided a differing account of travels and activities from the statements DETAR had provided. HALL admitted knowing narcotics were in the trunk and stated unidentified persons were to pay him "a couple hundred dollars here, a couple hundred dollars there" to transport the narcotics to an unknown location. HALL said the both he and DETAR were both tasked by unidentified persons to transport the drugs, and in return, HALL was going to purchase items of monetary value for DETAR.

12.    HALL and DETAR were issued a "notice to appear" for violating Title 21, U.S.C., Section 841(a)(1), Possession with Intent to Distribute Methamphetamine.

13.    Target Device 1 was found on HALL's person at the time of his arrest. Target Device 2 was found on DETAR's person at the time of arrest.

14.    Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the Target Devices. In light of the above facts and my experience and training, there is probable cause to believe that Defendant was using the Target Devices to communicate with others to further the distribution of illicit narcotics within the United States. Further, in my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug trafficking event in

1 the days and weeks prior to an event. Co-conspirators are also often unaware of a

2 defendant's arrest and will continue to attempt to communicate with a defendant after their

3 arrest to determine the whereabouts of the narcotics. Based on my training and experience,

4 it is also not unusual for individuals, such as Defendant, to attempt to minimize the amount

5 of time they were involved in their trafficking activities, and for the individuals to be

6 involved for weeks and months longer than they claim. Accordingly, I request permission

7 to search the Target Devices for data beginning on September 16, 2020, up to and

8 including October 16, 2020.

9

**METHODOLOGY**

10

11 15.    It is not possible to determine, merely by knowing the cellular telephone's

make, model and serial number, the nature and types of services to which the device is

12

subscribed and the nature of the data stored on the device. Cellular devices today can be

13

simple cellular telephones and text message devices, can include cameras, can serve as

14

personal digital assistants and have functions such as calendars and full address books and

15

can be mini-computers allowing for electronic mail services, web services and rudimentary

16

word processing. An increasing number of cellular service providers now allow for their

17

subscribers to access their device over the internet and remotely destroy all of the data

18

contained on the device. For that reason, the device may only be powered in a secure

19

environment or, if possible, started in "flight mode," which disables access to the network.

20

Unlike typical computers, many cellular telephones do not have hard drives or hard drive

21

equivalents and store information in volatile memory within the device or in memory cards

22

inserted into the device. Current technology provides some solutions for acquiring some of

23

the data stored in some cellular telephone models using forensic hardware and software.

24

Even if some of the stored information on the device may be acquired forensically, not all

25

of the data subject to seizure may be so acquired. For devices that are not subject to forensic

26

data acquisition or that have potentially relevant data stored that is not subject to such

27

acquisition, the examiner must inspect the device manually and record the process and the

28

6

1  results using digital photography. This process is time and labor intensive and may take

2  weeks or longer.

3        16.    Following the issuance of this warrant, I will collect the Target Devices and

4  subject them to analysis. All forensic analysis of the data contained within the Target

5  Devices and memory card(s) will employ search protocols directed exclusively to the

6  identification and extraction of data within the scope of this warrant.

7        17.    Based on the foregoing, identifying and extracting data subject to seizure

8  pursuant to this warrant may require a range of data analysis techniques, including manual

9  review, and, consequently, may take weeks or months. The personnel conducting the

10  identification and extraction of data will complete the analysis within ninety (90) days of

11  the date the warrant is signed, absent further application to this court.

12  //

13  //

14  //

15  //

16  //

17  //

18  //

19  //

20  //

21  //

22  //

23  //

24  //

25  //

26  //

27  //

28  //

**PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

18.     Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

**CONCLUSION**

19.     Based on all of the facts and information described above, my training and experience, and consultations with other law enforcement officers, I submit there is probable cause to believe that a search of the Target Devices will yield evidence of Defendant's violations of Title 21, United States Code, Sections 841 and 846. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the items described in Attachments A1 and A2, and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Special Agent Rockwell Herron
Drug Enforcement Administration

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this 21st day of October, 2020.

_____
HON. ALLISON H. GODDARD
UNITED STATES MAGISTRATE JUDGE

8